**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LINETTE JOHNSON, et al.**, | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 19-4264-KSM** |
| **CITY OF PHILADELPHIA**, | |
| Defendant. | |

**MEMORANDUM**

MARSTON, J.                                                     April 13, 2021

Plaintiffs Linette Johnson,[1] Renee Campbell, Jason Kurth, Nakita King, Ravin Harding, Kereen Forbes, Tracy L. Harris, Ramone Jones, Sebastian Matthew, Michael McKelvey, Johnnesheia Moody, Michael Poulson, Kelly Sellers, Patrick Sullivan, Vinetta Thomas, Arron Turner, Stacey Whitfield, Richard Daniels, Angela Bolton, Wanda Britford, Diara Graves, Demitriea A. Harris, Sherree Harris, Tyree Johnson, Charles Lawrence, Orges Prifit, and David E. Robinson are employed as correctional officers at the Riverside Correctional Facility ("Riverside") located in the City of Philadelphia. Plaintiffs bring this collective action on behalf of themselves and others similarly situated, alleging that Defendant the City of Philadelphia ("City") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b), by unlawfully depriving Plaintiffs of their statutory rights to overtime compensation. (Doc. No. 28.) Presently before the Court is

---

[1] It appears that Plaintiff Johnson's first name may have been misspelled in previously filed complaints as the spelling of her name in those documents ("Linette") does not comport with the spelling of her name in later filings ("Lynette"). (*Compare, e.g.*, Doc. No. 5 at p. 1, *with* Doc. No. 41 at p. 3.) Since the parties have not filed a motion or stipulation to amend the caption in this matter, the Court employs the spelling of Plaintiff Johnson's name found on the docket.

the parties' Joint Motion for an Order Certifying the Plaintiff Collective and Preliminarily Approving the Settlement Agreement and Release and Notice.  (Doc. No. 37.)  For the reasons explained below, the Court will grant the Motion.

## I.    BACKGROUND

While the parties contest whether the City is liable for violating the FLSA, the facts of this matter are largely undisputed.  Unless otherwise noted, this factual background is drawn from Plaintiffs' second amended complaint (Doc. No. 28).

Plaintiffs are correctional employees who work at Riverside, a prison run by the City. (*Id.* at ¶ 5.)  Plaintiffs work three regularly scheduled shifts a week.  (*Id.* at ¶ 10).  Due to the nature of their positions, under the FLSA they are entitled to overtime pay at a rate of 1.5 times their hourly rate for any work they perform beyond their ordinary 40-hour work week.  (*Id.*)  The United States Department of Labor and the Third Circuit have interpreted the FLSA to require employers to make overtime payments no later than the first pay day after the employer has had reasonable time to calculate the pay owed to the employee—generally the pay day for the first pay period after the pay period in which the overtime was accrued.  (*See id.* at ¶¶ 12–14 (citing 29 C.F.R. § 778.106; *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 135–36 (3d Cir. 1999)).)

During the collective action period,[2] Plaintiffs accrued overtime in three ways:  (1) through mandatory shifts, (2) through voluntary shifts, and (3) through reporting pre-shift for roll call.  (*See* Doc. No. 28 at ¶ 17.)  Regardless of the manner in which they accrued their overtime during this period, all such overtime was approved by the City.  (*Id.*)

On March 25, 2019, the City implemented a new payroll processing system, known as

---

[2] During settlement negotiations the parties agreed that the collective action period would begin on March 1, 2019 to "encompass everything that was being alleged."  (Hr'g Tr. at 11:22–23.)

"One Philly," which it used to calculate and pay its employees, including Plaintiffs.  (*See id.* at ¶ 18; *see also* Hr'g Tr. at 7:1–15.)  Before the implementation of One Philly, Plaintiffs had generally received overtime pay promptly, and any mistakes were quickly corrected.  (Doc. No. 28 at ¶ 18.)  However, after One Philly went into effect, there was a period of time in which Plaintiffs' overtime pay was either not processed in a timely manner, or was not paid at all.[3] (*See id.* at ¶¶ 21, 23–24.)

Plaintiffs filed this lawsuit on September 17, 2019, alleging violations of the FLSA and seeking their unpaid wages, liquidated damages, and reasonable costs and attorneys' fees.  (Doc. No. 1 at p. 10.)  On November 22, 2019, Plaintiffs filed an amended complaint.  (Doc. No. 5.) Then, on June 9, 2020, Plaintiff filed a corrected second amended complaint (Doc. No. 28), which is the operative complaint.[4]

Meanwhile, on May 8, 2020, in lieu of Plaintiffs filing a motion to proceed as a collective action and to facilitate § 216(b) notice, the parties filed a stipulation to the conditional certification of the collective class and notification.  (Doc. No. 19.)  Subsequently, on June 3, 2020, the parties stipulated to a modification of the conditional collective class certification definition.  (Doc. No. 27.)  Specifically, the collective is defined as:

> **FLSA Collective Class:**  All persons who are or have been employed by Defendant as Correctional Officers, at the Riverside Correctional Facility or Dormitories, who have not been compensated or were paid late, as defined by 29 C.F.R. § 778.106, for overtime, since the adoption of the computerized payroll

---

[3] Although the City asserts that the One Philly issues in this case have been resolved (*see* Hr'g Tr. at 6:17–21), it is unclear when that occurred.  According to Plaintiffs' second amended complaint, "[t]he last time that Plaintiffs and all Correctional Officers received overtime pay and roll call pay in conformity with the timely payment standard of the FLSA was with their last paycheck in March 2019."  (Doc. No. 28 at ¶ 21.)  At the preliminary settlement approval hearing, however, counsel represented that Plaintiffs had since received all of their overtime payments and that the only remaining claims in this matter were for liquidated damages under the FLSA.  (Hr'g Tr. at 5:20–6:2, 6:17–21.)

[4] The second amended complaint was first filed on May 14, 2020. (Doc. No. 24.)  However, on June 3, 2020, the parties stipulated to the filing of a corrected second amended complaint.  (Doc. No. 25.)

system known as the One-Philly system which started recording time for the
corrections officers on or about **March 25, 2019 to May 31, 2020.** The class of
Correctional Officers, includes individuals holding the Position of Correctional
Officers, as well as the positions of Sergeant or Lieutenant. (hereinafter defined
collectively as Plaintiffs). The individual Plaintiffs and the Plaintiffs in the FLSA
Collective Class have worked or work in excess of forty (40) hours during work
weeks since the institution of the computerized system and have not been
compensated or were compensated late for overtime.

(*Id.* at p. 2.)

On November 20, 2020, the parties, with the assistance of United States Magistrate Judge

Marilyn Heffley, agreed upon the terms of a settlement. (*See* Doc. No. 37 at p. 8.) The

Settlement Agreement defines the "Settlement Class" as "Plaintiffs and all persons who timely

returned opt-in consent forms to Collective Class Counsel for inclusion in the operative

conditional collective class."[5] (*Id.* at p. 4.) The Settlement Agreement provides that the City

will pay Plaintiffs $41,500. (*Id.* at p. 9.) Specifically, the agreement provides that Plaintiffs will

receive a *pro rata* share of a $30,000 settlement fund, based on the number of improperly

compensated overtime hours that they worked. (*Id.* at pp. 10, 23–26.) Additionally, Plaintiffs

Linette Johnson and Stacey Whitfield will each receive a $750 service award to compensate

them for "their efforts in bringing and prosecuting this matter." (*Id.* at p. 25.) Last, under the

terms of the agreement, Plaintiffs' counsel, Howard Trubman, Esquire, is designated as the

"Collective Class Counsel" and will be paid $10,000 to cover his costs and fees. (*Id.* at pp. 2,

25.)

In consideration of the benefits under the terms of the Settlement Agreement, the Opt-In

Plaintiffs agree to release:

[A]ll claims, obligations, demands, actions, rights, causes of action and liabilities,
whether known or unknown, against the City of Philadelphia and Releases
identified in the Settlement Agreement that were or could have been asserted in
the Complaint based on the facts alleged for alleged unpaid wages, overtime

---

[5]  The Settlement Agreement also states that there are 83 Settlement Class Members. (*Id.*)

compensation, liquidated or other damages, unpaid costs, restitution or other
compensation or relief arising under the FLSA or Pennsylvania law from March
1, 2019 to November 24, 2020.

(*Id.* at pp. 23–24.)

The parties filed a joint motion for certification of the collective and preliminary approval of their proposed settlement on February 12, 2021 (*id.*), and the Court held a hearing on that motion on March 11, 2021.  During the hearing, the Court identified two corrections that needed to be made to the Proposed Notice of Settlement.[6]  Following the hearing, an Amended Proposed Notice of Settlement was filed.  (Doc. No. 41.)

## II.   CONDITIONAL CERTIFICATION OF THE COLLECTIVE ACTION

### A.    Legal Standard

The FLSA allows an employee alleging an FLSA violation to bring an action on "behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  This is known as a "collective action."  Courts approve FLSA collectives in a two-step process.  *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Wright v. Lehigh Valley Hosp.*, Civil Action No. 10-431, 2010 WL 3363992, at *2 (E.D. Pa. Aug. 24, 2010).  At the first stage, the court considers whether the collective should be conditionally certified for the purpose of providing notice to class members.[7]  *Halle v. W. Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).  This case is currently at the conditional certification stage.

The burden of establishing that the members of the proposed collective are "similarly

---

[6] The notice the parties initially proposed sending to the collective contained a couple of typographical errors, including erroneously indicating that the total settlement amount was $40,000, with Plaintiff Johnson's and Plaintiff Whitfield's incentive payments to be deducted from the $30,000 in damages allotted to the collective.  (*See* Doc. No. 37 at pp. 31–32.)

[7] The second stage is known as the "decertification" stage; it takes place "at the close of [collective]-related discovery, when the defendant may move to decertify the [collective]."  *Wright*, 2010 WL 3363992, at *3.  In cases in which a collective action settles, this stage may never be reached.

situated" within the meaning of § 216(b) is on the plaintiff. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (2017); *Zavala*, 691 F.3d at 537. For the Court to grant conditional certification of the collective, Plaintiffs must "make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected [them] . . . and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 536 n.4). Factors courts consider at the conditional certification stage "include, but are not limited to, whether the plaintiffs (1) are employed in the same department, division, and location; (2) advance similar claims; (3) seek substantially the same form of relief; and/or (4) have similar salaries and circumstances of employment." *Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544, 548 (E.D. Pa. Aug. 12, 2020).

### B.   Analysis

Here, all four factors weigh in favor of conditionally certifying the collective. First, all 83 members of the collective work as correctional officers at Riverside—i.e., they all work in the same department, division, and location of the City's prison system. (*See* Doc. No. 28 at ¶ 5.) Next, all members of the collective allege that the City failed to timely pay them overtime, and that they are therefore entitled to liquidated damages. (*See id.* at p. 13; Hr'g Tr. at 5:20–6:2, 6:17–21.) As such, they all advance similar claims and seek the exact same form of relief. Finally, since all Plaintiffs are correctional officers who are paid overtime when they work more than 40 hours a week (*see* Doc. No. 28 at ¶¶ 5, 16–17), they have similar salaries and circumstances of employment. Also, while not dispositive, the parties have stipulated to certification of the collective for settlement purposes. (*See* Doc. No. 37 at p. 5.) For these reasons, the Court conditionally certifies the collective.

## III.    PRELIMINARY SETTLEMENT APPROVAL

### A.    Legal Standard

Courts considering whether to approve settlement of an FLSA action use a three-step process.  *See DiFlavis v. Choice Hotels Int'l, Inc.*, Civil Action No. 18-3914, 2020 WL 6728806, at *2 (E.D. Pa. Nov. 16, 2020).  First, the Court considers whether "the settlement concerns a 'bona fide dispute.'"  *Id.* (quoting *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)).  If it does, the Court next considers whether the settlement is "fair and reasonable for the employees."  *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777).  Last, the Court considers whether the settlement "furthers the FLSA's implementation in the workplace."  *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777).

In determining whether there is a bona fide dispute between the employees and the employer, courts consider whether the dispute involves legal or factual issues, "such as FLSA coverage or computation of back wages."[8]  *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679

---

[8] Courts in the Third Circuit, relying on *Morris v. Penn Mutual Life Insurance Co.*, Civ. A. No. 87-7063, 1989 WL 14063, at *5 (E.D. Pa. Feb. 21, 1989), have held that a dispute is only bona fide if it involves factual, not legal, matters.  *See, e.g.*, *Howard*, 197 F. Supp. 3d at 777; *Creed v. Benco Dental Supply*, No. 3:12-CV-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013); *Lignore v. Hosp. of Univ. of Pa.*, Civil Action No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007).  The issue that *Morris* dealt with was whether a pre-litigation agreement could compromise a plaintiff's ability to bring suit under the FLSA.  *See Morris*, 1989 WL 14063, at *1.  In that context, the court held that a plaintiff could waive her right to bring suit under the FLSA based on a factual dispute, but not based on a legal dispute.  *Id.* at *5.

However, the basis for extending this limitation on settlement of bona fide disputes to court-supervised settlements, as some courts have done, *see Howard*, 197 F. Supp. 3d at 777; *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016); *Creed*, 2013 WL 5276109, at *1, is unclear.  Indeed, the policy reasons identified in *Morris* for requiring a bona fide dispute to involve only factual issues—fear that employers would use unequal bargaining power to take advantage of low-wage, unsophisticated employees, *see Morris*, 1989 WL 14063, at *4–5—are vitiated when parties must receive court approval for their settlement agreements.  For this reason, the Court finds persuasive the Eleventh Circuit's reasoning in *Lynn's Food Stores* concluding that for purposes of court approval of an FLSA settlement, a bona fide dispute can involve either factual or legal issues.  *See* 679 F.2d at 1354; *see also DiFlavis*, 2020 WL 6728806, at *2 ("The Third Circuit Court of Appeals has not yet addressed directly the standard a district court should use when approving an FLSA settlement.  District courts within the Circuit have often looked to the standard adopted by the Eleventh Circuit in *Lynn's Food Stores, Inc., v. United States*

F.2d 1350, 1354 (11th Cir. 1982); *see also Bettger v. Crossmark, Inc.*, Civil Action No. 1:13-CV-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) ("An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial.").  A bona fide dispute exists when "the dispute . . . fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

In determining whether a settlement is fair and reasonable, courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson* to evaluate whether a Rule 23 class action settlement is fair and reasonable.  *See DiFlavis*, 2020 WL 6728806, at *3; *In re Chickie's & Pete's Wage & Hour Litig.*, Civil Action No. 12-6820, 2014 WL 911718, at *2–3 (E.D. Pa. Mar. 7, 2014).  *But see Kraus*, 155 F. Supp. 3d at 523 n.3 (observing that some of the *Girsh* factors do not apply in the context of FLSA settlements and that "though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable.").  The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (cleaned up).

As for whether the settlement advances the purposes of the FLSA, courts consider factors

---

when parties seek judicial approval of an FLSA settlement agreement." (citation omitted)).

such as whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's "informational objective." *In re Chickie's*, 2014 WL 911718, at *3; *DiFlavio*, 2020 WL 6728806, at *7–8.

### B.      Analysis

Here, the settlement agreement meets all the requirements for preliminary approval. First, the parties have a bona fide dispute, given both the factual and legal issues in this matter. Although the facts of this matter are largely uncontested, the parties vigorously dispute whether the City is liable to Plaintiffs for liquidated damages under the FLSA.  Plaintiffs maintain that the City knowingly and unreasonably violated the FLSA, and thus owes Plaintiffs liquidated damages.  (Doc. No. 28 at ¶¶ 42, 51.)  The City, on the other hand, argues that it has valid defenses:  that it acted in good faith and made overtime payments as soon as it became aware that they were owed, and that at least some of the unpaid overtime payments did not fall within the scope of the FLSA.  (Hr'g Tr. at 9:4–12.)  Plaintiffs maintain that even if those defenses were available to the City as a matter of law, it is unclear that the City would be entitled to them as a matter of fact.  (*Id.* at 9:15–17.)  Accordingly, because the parties dispute both the underlying facts and legal import of those facts, the Court concludes that they have a bona fide dispute.  *See Lynn's Food Stores*, 679 F.2d at 1354; *Sawyer v. Health Care Sols. at Home, Inc.*, No. 5:16-cv-5674, 2019 WL 1558668, at *3 (E.D. Pa. Apr. 10, 2019).

Next, the Court finds that the settlement agreement is fair and reasonable.  An analysis of the *Girsh* factors supports this conclusion.  First, as the parties acknowledged at the preliminary approval hearing, fully litigating Plaintiffs' claims and the City's potential defenses with respect to each individual Plaintiff would likely be factually complex and prohibitively expensive.  (*See*

Hr'g Tr. at 9:4–10:7.)  This is particularly the case given that the parties estimated that the total possible recovery for the collective is relatively small.  (*See id.* at 25:11–23 (estimating that the collective would be able to win no more than $40,000 to $50,000 in damages).)  Thus, this factor weighs in favor of finding that the settlement is reasonable.

The second *Girsh* factor—the reaction of the collective to the settlement—does not apply at this stage of the proceedings because the collective has not yet been formally notified of the settlement.  This factor is therefore neutral.

With respect to the third *Girsh* factor, proceedings in this matter are relatively advanced, and the parties have completed a significant amount of discovery.  The parties reviewed a substantial amount of information in order to determine which City employees were entitled to participate in the collective, and what their damages were.  (*See* Doc. No. 37 at pp. 8, 14–15.) This included reviewing time sheets and thousands of pay records for the members of the collective.  (*Id.* at 8, 14.)  Additionally, counsel for the City interviewed members of the City's One Philly team, the prison's payroll clerks, and the Deputy Commissioner of Prisons.  (Hr'g Tr. at 15:22–16:3.)  Moreover, with the assistance of Judge Heffley, the parties engaged in reportedly extensive arms' length settlement negotiations over a period of several months.  (Doc. No. 37 at pp. 14–15.)  Given the advanced stage of litigation and extensive discovery in this matter, this factor weighs in favor of finding the settlement agreement reasonable.

Turning to the risks posed by this case, both the risk of establishing liability and the risk of establishing damages weigh in favor of finding that the settlement is reasonable.  As the parties acknowledged in their motion for preliminary approval and at the preliminary approval hearing, they disagree on whether the City violated the FLSA and state law, and if the City did violate the law, how to appropriately calculate Plaintiffs' damages.  (*Id.* at pp. 13–14; Hr'g Tr. at

9:4–17.)  Given that the City has a colorable defense that it acted in good faith and had a reasonable basis for believing that it was not violating the FLSA, and the difficulty of litigating this defense with respect to each individual member of the collective,[9] the Court concludes that proving both liability and damages would have been difficult for the collective.  However, because the parties believe that they have identified all potential members of the collective, and because all of those members have opted in (*see* Doc. No. 37 at p. 9; Hr'g Tr. at 10:8–12), the Court concludes that the risk of maintaining this collective action through trial is relatively low. Accordingly, this risk factor weighs against a finding that the settlement is reasonable.

Finally, the Court considers the *Girsh* factors dealing with the reasonableness of the settlement fund.  Although the City could potentially withstand a greater judgment, the Court notes that this factor is significantly outweighed by the last two factors.  Here, the settlement fund (not counting the amounts set aside for incentive awards and attorneys' fees and costs) is $30,000.  (Doc. No. 37 at p. 23.)  Given that the parties estimate that the collective would recover no more than $40,000 to $50,000 at trial (*see* Hr'g Tr. at 25:11–23), this is a reasonable settlement amount.  This conclusion is bolstered by the substantial risk that Plaintiffs would be unable to prove the City's liability or their own damages at trial—not to mention the cost of litigating these issues for each of the 83 members of the collective.  Therefore, the final two *Girsh* factors weigh strongly in favor of finding the settlement agreement fair and reasonable.

In addition to evaluating the *Girsh* factors, the Court considers the reasonableness of the proposed incentive payments to Plaintiffs Johnson and Whitfield, and the proposed payment of

---

[9] Because Plaintiffs have all received their back overtime pay, all that remain are their claims for liquidated damages under the FLSA.  (Hr'g Tr. at 5:20–6:2.)  "To avoid mandatory liability for liquidated damages [under the FLSA], an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act."  *Sec'y U.S. Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 432 (3d Cir. 2017).  The inquiry into good faith is subjective, while the inquiry into reasonableness is objective; employers must prove a good faith defense by plain and substantial proof.  *Id.*

attorneys' fees and costs to Plaintiffs' counsel.  The Court finds that both payments are reasonable.  To begin, Plaintiffs Johnson and Whitfield provided significant assistance to class counsel, including recruiting additional plaintiffs to join this matter, providing background information about the terms of their employment with the City and the City's policies and practices, and providing counsel with the information necessary to support the allegations in the complaint and amended complaints.  (*See* Doc. No. 37 at p. 16; Hr'g Tr. at 20:13–24.) Additionally, the payments are relatively small; each $750 incentive payment is approximately 1.8 percent of the collective's total recovery in this matter.  Courts have often approved similar incentive awards in wage and hour cases.  *See, e.g.*, *Young v. Tri Cnty. Sec. Agency, Inc.*, Civil Action No. 13-5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) (approving an incentive award that was approximately 3.5 percent of the class's total recovery).

The payment of $10,000 to Plaintiffs' counsel to cover his fees and costs is similarly reasonable.[10]  Plaintiffs' counsel is an experienced attorney who has been practicing law for 44 years and has substantial experience in employment and labor law matters.  (Hr'g Tr. at 22:17– 21.)  He and his firm have invested significant effort into prosecuting this action; he estimates that they have devoted "at least 125 hours" to this case.  (*Id.* at 22:7–13.)  Even assuming that counsel and his firm incurred no costs, they would recover only $80 per hour that they dedicated to this matter.  Moreover, as discussed above, Plaintiffs' counsel obtained a substantial benefit to the class in this matter, as he was able to recover between 60 and 75 percent of their total possible damages, while avoiding the high cost of fully litigating each collective member's individual claims.  In light of these facts, the $10,000 payment to cover Plaintiffs' counsel's fees

---

[10] Courts in the Third Circuit typically use the percentage-of-recovery method when determining whether attorneys' fees are reasonable in FLSA cases.  *Kraus*, 155 F. Supp. 3d at 533.  "The percentage-of-recovery method awards a fixed portion of the settlement fund to counsel."  *Id.*

and expenses—less than 25 percent of the collective's total recovery in this matter—is reasonable.

Under the *Girsh* framework and the Court's independent assessment of the settlement agreement, the Court concludes that the parties' proposed settlement agreement is fair and reasonable.

Last, the Court considers whether the parties' proposed settlement agreement advances the purposes of the FLSA. It does. The settlement agreement only requires Plaintiffs to release their FLSA and state law payment-related claims against the City based on the facts asserted in the second amended complaint. (Doc. No. 37 at pp. 17, 24.) Accordingly, the release is appropriately and narrowly tailored. *See DiFlavis*, 2020 WL 6728806, at *6 (collecting cases). Moreover, the settlement agreement contains no confidentiality provision (*see* Doc. No. 37 at p. 17. *See generally id.* at pp. 21–29), so it does not "frustrate the purpose of the [FLSA] by restricting information." *DiFlavis*, 2020 WL 6728806, at *7. Therefore, the Court finds that the parties' settlement agreement, which provides Plaintiffs with liquidated damages for their late-paid overtime, advances the purposes of the FLSA.

## IV.    NOTICE

### A.    *Legal Standard*

Similar to the procedure in a Rule 23 class action, courts that have conditionally certified a collective action have "discretion to provide court-facilitated notice to potentially eligible members of the collective action." *Leap v. Yoshida*, Civil Action No. 14-3650, 2015 WL 619908, at *9 (E.D. Pa. Feb. 12, 2015) (quoting *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573 (D.N.J. 2014)). In the context of a collective action settlement, this notice serves to inform the members of the collective of the terms of the settlement, to help them

determine whether they wish to opt into the suit.  *See id.*[11]  The main goal of court involvement

in the notice process in collective actions is to prevent "the potential . . . misuse of the class

device . . . by misleading communications."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

171 (1989).  To this end, courts seek to ensure that such notices are "timely, accurate, and

informative."  *Id.* at 172.

>   **B.**     **Analysis**

Here, the form and content of the settlement notice that the parties propose sending to the

collective meets all the requirements for approval.[12]  The notice will be mailed to the last known

mailing addresses of all collective members, as well as emailed to those collective members for

whom class counsel has an email address.  (Doc. No. 37 at p. 18.)  This is an effective means of

notifying the collective of the settlement.  This is particularly the case because, in the event that

Plaintiffs' counsel does not have a current address for one of the members of the collective, he

will ask counsel for the City to provide an updated address.  (Hr'g Tr. at 16:24–17:1.)  Given that

all members of the collective still work for the City (*see id.* at 16:12–15), the parties should be

able to find current mailing addresses for all members of the collective.

Here, the Court is satisfied that the content of the proposed settlement notice is appropriate.

The notice explains, in plain language, what this case is about, what the terms of the settlement

are, and how members of the collective will receive their money.  (Doc. No. 41 at pp. 2–3.)  The

notice also provides information about who class counsel is and how he will be paid, as well as

information about the incentive payments that will be made to Plaintiffs Johnson and Whitfield.

---

[11] Here, as the parties believe that all eligible members of the collective have already opted into the suit
(*see* Hr'g Tr. at 10:8–12), notice serves to inform the members of the terms of the settlement.

[12] As noted above, *supra* note 6, following the preliminary approval hearing, a corrected proposed notice
was filed.  (Doc. No. 41.)  It is that corrected notice that the Court refers to in this section.

(*Id.* at p. 3.)  Moreover, it provides information of vital importance to members of the collective with questions or concerns about the settlement:  It instructs them to contact Plaintiffs' counsel with any questions (and provides his contact information), and informs them of when and where the final settlement approval hearing will take place.  (*Id.* at pp. 2–3.)

For these reasons, the Court approves the parties' proposed settlement notice.

## V.  CONCLUSION

For these reasons, the collective shall be conditionally certified, the parties' settlement shall be preliminarily approved, and the parties' corrected settlement notice shall be approved. The Court will hold a final settlement approval hearing on June 1, 2021 at 10:00 a.m. in Courtroom 8A.

An appropriate order follows.